IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MILBURGA AIDE CRUZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 5126 |
| v. ) | |
| ) | Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff Milburga Aide Cruz applied for Social Security benefits on September 7, 2012, alleging she became disabled on July 31, 2006; her date last insured ("DLI") was December 31, 2011 (R. 22-23). Ms. Cruz's application was denied initially and on reconsideration. After a hearing before an Administrative Law Judge ("ALJ"), the ALJ issued a written opinion denying Ms. Cruz's claim for benefits. The Appeals Council denied Ms. Cruz's request for review of the ALJ's decision, rendering it the final decision of the Commissioner (R. 1). Ms. Cruz has filed a motion to reverse or remand the ALJ's decision (doc. # 13), and the Commissioner has filed a cross-motion asking the Court to affirm the decision (doc. # 22). For the following reasons, we deny Ms. Cruz's motion to remand and grant the Commissioner's motion to affirm.

I.

Ms. Cruz was born in Mexico in 1967 and moved to the United States when she was 23 years old (R. 49). She has a sixth grade education, and her primary language is Spanish (R. 193-

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2]On June 28, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 9).

95). After performing repetitive work on an assembly line for more than 20 years, Ms. Cruz developed ganglion cysts, bone spurs and carpal boss (bump) in her right wrist, which David Norbeck, M.D., surgically removed in January 2001 (R. 738). At a post-operative follow-up visit in May 2001, Dr. Norbeck opined that Ms. Cruz was at maximum medical improvement after surgery and recommended that she no longer use an "air ram" (a pneumatic, or air powered, screwdriver) on the assembly line and limit her lifting to no more than 10 pounds on her right side (R. 743).

In 2002, Ms. Cruz returned to Dr. Norbeck and reported "some recurrent pain in her right wrist" after having to do a lot of repetitive activity at work (R. 744). Dr. Norbeck noted that Ms. Cruz had some tenderness, but full range of motion and no swelling in her wrist (*Id.*). X-rays showed no abnormalities, but an MRI showed numerous ligament tears (R. 744-45). In September 2002, Jay Pomerance, M.D., performed surgical repair of the ligaments and an ulnar shortening (procedure using plate and screw fixation) (R. 911). Ms. Cruz returned to working light duty by January 2003, but continued to have some pain with wrist flexion (R. 991-97, 1013).

Dr. Pomerance removed the plate in March 2003 because it was causing Ms. Cruz discomfort (R. 1013). He released Ms. Cruz to work using her right hand "as a light assist only while wearing the splint" (1078-79). Though x-rays revealed normal healing, Ms. Cruz continued to report pain and tenderness (*Id.*). In May 2003, Dr. Pomerance gave Ms. Cruz a local steroid injection in her right wrist, but she reported that the injection provided no relief (R. 1079-80). He gave her a second injection on May 15, 2003, which gave her minimal relief, and Dr. Pomerance stated that Ms. Cruz could continue her present duty work, avoiding heavy grip (R. 1080-81). Ms. Cruz continued to report pain throughout 2003, but other than some tenderness,

her examinations were normal (R. 1082-83). Dr. Pomerance prescribed Ultram (narcotic) and opined that she could return to work other than doing heavy lifting or gripping, with a 25 pound restriction (R. 1083-84).

In June 2005, Ms. Cruz returned to Dr. Pomerance, reporting that her pain continued in her right forearm, and she had experienced intermittent numbness and tingling in her right hand for the previous two to three months (R. 1075). Upon examination, Ms. Cruz had tenderness and reduced range of motion in her wrist, but her X-rays and bone scans were normal (R. 1075-76). Dr. Pomerance opined that Ms. Cruz may benefit from a tenolysis (surgery to release a tendon from adhesions or scar tissue that binds tendons to surrounding tissue); however, he also stated that Ms. Cruz "could also just simply live with the ulnar forearm discomfort since it does not appear that those adhesions are functionally disabling" (R. 1076). Dr. Pomerance stated that Ms. Cruz could continue in her present duty job, self-limiting as needed (*Id.*).

On July 21, 2006, Ms. Cruz began treating with orthopedist Serafin DeLeon, M.D., (and her colleague Dr. Meltzer) for numbness and pain in her left thumb radiating up her forearm, which Ms. Cruz reported had begun two months before (R. 322). In her report of the July 2006 visit, Dr. DeLeon wrote that since the surgeries on her right hand and forearm in 2001, Ms. Cruz had been moved to a different place on the assembly line at work and instructed to use only her left wrist due to residual weakness and limited range of motion on her right side (R. 323). On examination, Ms. Cruz had marked tenderness and pain over her left thumb, where Dr. DeLeon felt a palpable nodule, and she had tenderness and pain and some limited range of motion in both wrists and hands (*Id.*). Dr. DeLeon gave Ms. Cruz steroid injections in her left wrist area and thumb and recommended that Ms. Cruz not return to work at the assembly line (*Id.*). Dr. DeLeon diagnosed Ms. Cruz with left deQuervain's disease (painful condition affecting the tendons on

the thumb side of the wrist),[3] left symptomatic trigger thumb (stenosing tenosynovitis, where fingers get stuck in a bent position and straighten with a snap)[4] and chronic right wrist pain (R. 324). Dr. DeLeon opined that these conditions were the result of Ms. Cruz's work activities involving repetitive gripping and twisting (R. 313). Dr. DeLeon also noted that Ms. Cruz had to be in Mexico the following week for "an acute family problem" (R. 324). Ms. Cruz has not worked since July 31, 2006 (R. 194-95).

Ms. Cruz had good pain relief for two weeks after the injections (R. 324). At an examination in September 2006, Dr. DeLeon observed that Ms. Cruz had "very minimal tenderness to palpation" along her left thumb, with full flexion and extension, and tenderness over a portion of her left wrist (R. 325). Along her right wrist, Ms. Cruz had some signs of mild tenosynovitis, but mainly signs of chronic pain and some limited motion (*Id.*). In October 2006, Ms. Cruz decided to undergo surgery on the tendons in her left thumb and wrist because prior injections did not provide lasting relief (R. 317). On December 22, 2006, Dr. DeLeon performed surgery to release the pressure around the tendons in Ms. Cruz's left thumb and wrist (R. 320).

Ms. Cruz received physical therapy, and at a follow-up appointment with Dr. DeLeon on January 26, 2007, Ms. Cruz had minimal pain and full flexion at her thumb, with some residual mild tenderness over her wrist (R. 316). The next month, Dr. DeLeon wrote that Ms. Cruz's range of motion and grip strength were gradually improving, but she still had a little bit of soreness in her left wrist (*Id.*). By her appointment in April 2007, Dr. DeLeon wrote that Ms. Cruz was "much improved," with only some residual weakness in her left hand and tightness and mild tenderness along her wrist (*Id.*). Dr. DeLeon released Ms. Cruz to full duty work (*Id.*).

---

[3]http://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/basics/definition/con-20027238.

[4]http://www.mayoclinic.org/diseases-conditions/trigger-finger/basics/definition/con-20043819.

4

The record does not contain any medical evidence of Ms. Cruz's hand or wrist pain for the next five years (R. 22). While the record contains medical reports during these years of other ailments that afflicted Ms. Cruz -- such as stomach pain, cysts in her ovaries, difficulty urinating, irritable bowel syndrome and gastrointestinal reflux disease ("GERD") -- Ms. Cruz does not address these other ailments in her motion to remand, and so we do not need to do so here.

On May 11, 2012, Ms. Cruz returned to Dr. DeLeon, stating that about two to three years earlier, she started experiencing pain in both wrists, worse on the right (R. 341). Examination showed some tenderness in both wrists, and Dr. DeLeon gave Ms. Cruz steroid injections in both wrists (*Id.*). At a follow-up visit on June 15, 2012, Ms. Cruz reported that the injections did not alleviate her pain (R. 337). Dr. DeLeon diagnosed Ms. Cruz with bilateral DeQuervain's and bilateral wrist synovitis (*Id.*). Dr. DeLeon wrote that Ms. Cruz's options were "either to live with the pain or undergo a surgery," but Dr. DeLeon was "not 100% confident" that the surgery would help her pain (*Id.*). On June 18, 2012, Dr. Deleon performed bilateral tendon release surgery and bilateral wrist arthroscopy with synovectomy to remove certain connective tissue and repair certain tendons in Ms. Cruz's wrists (R. 343).

After surgery, Ms. Cruz received occupational therapy (R. 755). During July 2012, she showed mild improvement in range of motion, pain and functional activities, but she still had some pain and discomfort when performing activities such as opening jars, dressing, and washing dishes (R. 755-60).

In November 2012, a state agency physician found there was "insufficient evidence" to evaluate plaintiff's disability claim from her alleged onset date through her DLI of December 2011 (R. 82-85). On reconsideration, Ms. Cruz submitted additional evidence of her impairments from 2012 and 2013, but in March 2013, the state agency physician affirmed the earlier

5

determination, finding that there was "insufficient evidence to support severity prior to DLI" due to "a significant lapse in time from treating sources from 2007 to 2012" (R. 92).

In January 2013, Dr. DeLeon observed that Ms. Cruz had full range of motion in her fingers and wrists, but Ms. Cruz reported that she still had pain with use and lifting (R. 1066). Dr. DeLeon told Ms. Cruz that there was nothing more she could do for her and instructed Ms. Cruz to use Tylenol for pain and to ice her wrist (*Id.*).

On April 22, 2014, Ms. Cruz testified at a hearing before the ALJ with the assistance of a Spanish interpreter (R. 40). Ms. Cruz primarily testified to her daily activities and functional limitations during that time period. Her wrists hurt her so much that she had difficulty zipping things, bathing, writing and gripping a steering wheel (*see, e.g.*, R. 53-57, 64-65). She also developed back pain over the previous year, for which she took prescription medication (R. 68-69).

## II.

On December 19, 2014, the ALJ issued a written opinion finding Ms. Cruz was not disabled from her alleged onset date of July 31, 2006, through her date last insured of December 31, 2011 (R. 33). The ALJ made this determination at Step 2 of the sequential evaluation, because she found that Ms. Cruz did not have any severe medically determinable impairments during the relevant time period (R. 24-25). The ALJ found that Ms. Cruz had several non-severe medically determinable impairments, including: history of multiple surgeries on the right hand, history of surgery on the left hand, chronic sinusitis, GERD, chronic gastritis, erythematous mucosa of the stomach, history of cystocele and bladder issues with repair surgery and sling placement, stable non-obstructing kidney stone, fatty liver, small bilateral ovarian cysts, and benign cysts of the left breast status post excision and biopsy (R. 24-25). However, the ALJ

determined that all of Ms. Cruz's "conditions resolved with treatment and created no more than minimal limitations within 12 months of treatment" (R. 25).

The ALJ found that Ms. Cruz's "statements concerning the intensity, persistence and limiting effects of her conditions from July 2006 through December 31, 2011, her date last insured, [we]re not supported by the preponderance of the evidence" (R. 26). Instead, the ALJ determined that Ms. Cruz's impairments did not significantly limit her ability to perform basic work activities between her alleged onset date and her DLI (R. 25-26).

The ALJ reviewed the medical evidence from before July 31, 2006, including the multiple surgeries on Ms. Cruz's right wrist in 2001 and 2002, but noted that Ms. Cruz was able to continue working with her left hand, do light housework and take care of her personal hygiene (R. 26-27). By September 2003, Ms. Cruz's doctor released her to full work activity with both hands (R. 27). However, she again complained of pain in her wrist in 2005, although objective tests were normal (*Id.*).

On July 31, 2006, Ms. Cruz's alleged onset date, she stopped working, and soon afterwards traveled to Mexico (R. 27).[5] The ALJ noted that afterwards, Ms. Cruz began to complain of pain in her left hand (*Id.*). Eventually, in December 2006, Ms. Cruz had surgery on her left hand, but she regained "effective use of her left hand within 12 months" as her doctor returned Ms. Cruz to full work duty, using both hands, in April 2007 (*Id.*). The ALJ also noted that Ms. Cruz was able to travel to Mexico again in 2010 (R. 28).

The ALJ also reviewed the medical evidence in the record from after Ms. Cruz's DLI to see if it supported an inference that she had a disability prior to December 31, 2011 (R. 28).

---

[5] The ALJ states that Ms. Cruz stopped working because she was laid off, and that there was no evidence at that time that Ms. Cruz was unable to work due to her right hand or other complaints (R. 27). However, as this Court noted above, Ms. Cruz began to complain of limitations due to her left hand in July 2006. This discrepancy does not affect the ALJ's decision or the Court's decision because the ALJ recognized that Ms. Cruz's left hand complaints began soon after July 2006.

7

While the ALJ acknowledged that Ms. Cruz's post-DLI bilateral thumb and wrist pain was "likely due to the claimant's years of repetitive work and was possibly present to some degree prior to December 2011," the ALJ found that before December 2011, her condition was not disabling because "she had successful surgeries and recovered quickly" (R. 29). Specifically, the ALJ noted that Ms. Cruz was able to return to work after the surgeries on her right hand in 2001 and in 2003 (R. 31). In addition, even if Ms. Cruz's left hand complaints began as early as July 2006, the ALJ found that any left hand problems were not disabling for at least 12 months, because Dr. DeLeon returned Ms. Cruz to full work duty in April 2007, five months after she had surgery on her left hand (R. 32). Thus, the ALJ concluded that Ms. Cruz was not under a disability from July 31, 2006, the alleged onset date, through December 31, 2011, the DLI (*Id.*).

### III.

We review the ALJ's decision deferentially to determine if it is supported by "substantial evidence," which the Seventh Circuit has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). Ms. Cruz argues that the ALJ's determination was erroneous, because the ALJ should have found that her wrist and thumb impairments -- specifically, her diagnoses of left thumb stenosing tenosynovitis and deQuervain's tenosynovitis and the chronic pain resulting from these conditions -- were severe (doc. # 14: Pl.'s Mem. at 11).

### A.

The issue before the Court is whether the ALJ's Step 2 determination that Ms. Cruz did not have a severe impairment is supported by substantial evidence. At Step 2, a claimant must show that she suffered from a severe medically determinable physical or mental impairment beginning before her date last insured, which can be expected to result in death or last at least 12

8

months. 42 U.S.C. § 423(d). If a claimant does not make this showing, she must be found not disabled. 20 C.F.R. § 404.1520(a)(4).

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Put another way, "an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p. "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities," SSR 85-28, which the Social Security regulations define as "the abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1522(b).

In determining whether a claimant's impairment or combination of impairments significantly limit her ability to do basic work activities, the ALJ must first determine if the "requisite relationship between the medically determinable impairment(s) and the alleged symptom(s)" was established, and then consider "the intensity, persistence, and limiting effects of the symptom(s) . . . along with the objective medical and other evidence in determining whether the impairment or combination of impairments is severe." SSR 96-3p. In this case, the ALJ determined that Ms. Cruz had certain medically determinable impairments that could reasonably be expected to produce her alleged symptoms. As relevant to the issues raised in Ms. Cruz's motion, the ALJ found that Ms. Cruz had the medically determinable impairments of a history of multiple surgeries on the right hand and a history of surgery on the left hand, which could reasonably have been expected to cause Ms. Cruz's alleged symptoms (R. 24-25). However, the ALJ concluded that "the claimant's statements concerning the intensity,

9

persistence and limiting effects of her conditions from July 2006 through December 31, 2011, her date last insured, are not supported by the preponderance of the evidence" (R. 25).

**B.**

Initially, Ms. Cruz contends that the ALJ erred by failing to state that left thumb stenosing tenosynovitis, deQuervain's tenosynovitis and chronic pain were medically determinable impairments (Pl.'s Mem. at 11). While the ALJ did not specify that these conditions were medically determinable impairments, the ALJ determined that "history of multiple surgeries on the right hand" and "history of surgery on the left hand" were medically determinable impairments. Ms. Cruz's history of hand surgery included -- and indeed was based on -- the medical evidence of left thumb stenosing tenosynovitis and deQuervain's tenosynovitis, as well as Ms. Cruz's complaints of pain and functional limitations that led to these diagnoses. The ALJ adequately analyzed this medical evidence in considering Ms. Cruz's hand impairments. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (finding no error where the ALJ provided an adequate discussion of the claimant's impairments, the objective medical evidence, and her credibility "elsewhere in the decision" rather than at a particular step of the sequential evaluation process). Thus, we find no error in the ALJ's discussion of Ms. Cruz's medically determinable impairments.

**C.**

Ms. Cruz next claims that the ALJ erred in finding that her hand and wrist impairments were not severe between her alleged onset date and her date last insured. Specifically, Ms. Cruz contends that in making her determination, the ALJ overlooked or misconstrued Dr. Pomerance's and Dr. DeLeon's medical opinions and ignored her "years of consistent reports of pain" (doc. # 24: Pl.'s Reply at 1-2). We disagree.

10

The critical inquiry here is whether Ms. Cruz suffered from a severe impairment in her wrists or hands that began before her date last insured of December 31, 2011, and lasted at least 12 months. As the ALJ noted, there is evidence that Ms. Cruz suffered pain and limitations from hand or wrist impairments beginning near her alleged onset date of July 31, 2006, and continuing approximately eight months, until April 2, 2007, when her hand surgeon, Dr. DeLeon, released her to full duty work (R. 27; R. 316). After that, Ms. Cruz did not report hand or wrist pain to any medical provider -- despite receiving medical treatment for other alleged ailments -- until she returned to Dr. DeLeon more than five years later and about five months after her DLI, on May 11, 2012 (R. 341, R. 27-29).[6] This large gap during the critical time period shows that, contrary to her contentions, Ms. Cruz's reports of pain were far from consistent.

"The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, even if the reason for the sparse record is simply a long lapse of time." *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008); *see also Thompson v. Colvin*, 575 F. App'x 668, 675 (7th Cir. 2014) (affirming ALJ decision where ALJ gave little value to physician letters written before the alleged onset date and after the date last insured). Here, the ALJ considered all of the evidence in the record -- extending from before Ms. Cruz's alleged onset date until after her DLI -- but the ALJ determined that Ms. Cruz could not overcome the more than five year gap in which she did not complain of hand or wrist pain or receive treatment for it (R. 28).

The ALJ's decision was supported by substantial evidence. It was consistent with the state agency consultative opinions, which agreed that there was insufficient evidence to determine disability between the alleged onset date and the DLI. In addition, the ALJ's decision

---

[6]The ALJ states that Ms. Cruz began complaining again of pain in her wrists and hands in June 2012. However, the record shows that Ms. Cruz actually returned to Dr. DeLeon in May 2012. This discrepancy does not affect the Court's analysis here.

11

was consistent with the opinion of Ms. Cruz's treating physician, Dr. DeLeon, who opined that she could return to work in April 2007. Ms. Cruz's return to Dr. DeLeon more than five years later in May 2012 does not change this conclusion, because Dr. DeLeon "did not offer a retrospective opinion about Ms. [Cruz's] impairments [from] the critical time period" between July 31, 2006 and December 31, 2011. *Kladis v. Colvin*, No. 12 C 7694, 2014 WL 2210462, at *5 (N.D. Ill. May 27, 2014). *See also Guranovich v. Astrue*, 465 F. App'x 541, 544 (7th Cir. 2012) (affirming this Court's finding that the claimant's failure to seek help for his PTSD until years after his date last insured and the onset of symptoms "left the ALJ without sufficient medical evidence to find him disabled as of that date"); *Stepp v. Colvin*, 795 F.3d 711, 719-20 (7th Cir. 2015) (holding that the ALJ adequately supported her finding that the claimant's carpal tunnel was not severe where the ALJ relied on opinions from several physicians indicating that the claimant's manipulative abilities were "satisfactory," and the claimant did not introduce evidence of limitations related to this impairment that had lasted or could be expected to last for twelve consecutive months).

As this discussion shows, contrary to Ms. Cruz's contentions, the ALJ did not ignore her reports of pain. Rather, the ALJ properly determined that Ms. Cruz's complaints of pain and functional limitations during the relevant time period were not supported because of "the lack of evidence available with respect to [the claimant's] condition during the critical period prior to her date last insured." *Eichstadt*, 534 F.3d at 668.

In addition, despite Ms. Cruz's contentions, the ALJ did not err in assessing Dr. Pomerance's opinions. Dr. Pomerance treated Ms. Cruz from September 2002 through May 2003, and then again in June 2005, long before her alleged onset date of July 31, 2006. In 2003, Dr. Pomerance released Ms. Cruz to work other than heavy lifting or gripping (*see* R. 1083-84),

and in 2005, he opined that she could continue in her present duty job, self-limiting as needed, despite her residual complaints of pain in her right wrist (R. 1076). Ms. Cruz contends that the ALJ put too much emphasis on Dr. Pomerance's release to work, because he released her to work "as tolerated," not full duty (Pl.'s Reply at 2). However, Dr. Pomerance did not limit Ms. Cruz to less than full-time work. The limitation to less than heavy duty work did not prevent Ms. Cruz from performing full-time assembly line work. The ALJ's analysis was consistent with Dr. Pomerance's conclusions.

Likewise, contrary to Ms. Cruz's contentions, the ALJ did not ignore evidence that her left wrist impairment began in July 2006 (Pl.'s Reply at 3). As we explain above, the ALJ acknowledged Ms. Cruz's complaints of pain and functional limitations and the fact that she began treating with Dr. DeLeon for numbness and pain in her left wrist and thumb at that time. The ALJ also did not put too much weight on the trip Ms. Cruz took to Mexico at the end of July 2006. Even assuming Ms. Cruz had a severe hand or wrist impairment at that point, it would not have met the 12 month durational requirement, given the statement of her treater, Dr. DeLeon, releasing her to full-duty work on April 2, 2007, less than nine months later.

Thus, we conclude that the ALJ properly evaluated Ms. Cruz's claims against the lack of evidence and treatment in the record to find that she did not establish that she suffered from a severe medically determinable physical impairment in her hands or wrists for a period of at least twelve months between her alleged onset date and her date last insured.

## **CONCLUSION**

For the foregoing reasons, the Court denies Ms. Cruz's motion for reversal or remand (doc. # 13). We grant the Commissioner's motion (doc. # 22) and affirm the ALJ's decision. The case is terminated.

ENTER:

Sidney L. Schenkier
**United States Magistrate Judge**

**Dated: October 17, 2017**